**Paul J. BRENNER**

v.

**TEXTRON AEROSTRUCTURES, A DIVISION OF TEXTRON, INC.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 10, 1993.

Permission to Appeal Denied by
Supreme Court March 21, 1994.

Randall C. Ferguson, H. Rowan Leathers, III, Kenneth A. Weber, Manier, Herod, Hollobaugh & Smith, Nashville, for appellant.

Robert E. Boston, Waverly D. Crenshaw, Jr., Waller, Lansden, Dortch & Davis, Nashville, for appellee.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiff Paul J. Brenner from the judgment of the trial court granting defendant Textron Aerostructure's (Textron) motion for summary judgment. Plaintiff's suit involves a claim that Textron discriminated against him based on his age and in violation of the Tennessee Human Rights Act, Tennessee Code Annotated § 4–21–401 *et seq.* However, the trial court found that "plaintiff ... presented no evidence showing that age was a determining factor in ... Textron's decision." The trial court then granted defendant's summary judgment motion and dismissed plaintiff's complaint.

Plaintiff/appellant has presented the following three issues for our consideration:

1. Whether the trial court erred when it granted Textron's Motion for Summary Judgment after finding that Brenner failed to present sufficient evidence to create genuine issues of material fact.

2. Whether the trial court erred when it concluded that Brenner failed to present direct and circumstantial evidence establishing that age was a determining factor in Textron's decision to terminate his employment.

3. Whether the trial court erred when it concluded that Brenner failed to present sufficient evidence that his age was a determining factor in Textron's decision to reject his application for re-employment.

### FACTS.

Plaintiff was employed by Textron, a manufacturer of aircraft parts and other large machinery, from 4 May 1981 until 13 July 1990. Textron hired plaintiff as a salaried at-will employee, and plaintiff held several management-level positions during his employment. The final position plaintiff held was Manager of Training in the Human Resources Department. Textron eliminated the Manager of Training position during a reorganization and reduction in force, and thus plaintiff was terminated. Plaintiff was forty-seven (47) years old at the time of his termination.

Plaintiff's former job responsibilities and functions as Manager of Training were redistributed to other existing job positions within Textron's Human Resources Department. In support of his discrimination claim, plaintiff points to the fact that Peggy Tollisin, who was thirty-seven years old, assumed many of his responsibilities. However, defendant rebuts that argument by stating that "[t]he employees who received the redistributed duties and job responsibilities of the former manager of training position were both over and under the age of 40."

After his termination, plaintiff submitted a re-application, consistent with company procedure for terminated employees, to be considered for open positions commensurate with his qualifications. Three months after Textron eliminated plaintiff's position, Textron filled a newly created position entitled "Human Resources Generalist" with a twenty-seven-year-old male. Plaintiff sought consideration for the newly created position, but he was informed that he was not qualified.

The re-application form signed by plaintiff specified in large capital letters: "THIS IS NOT TO BE CONSTRUED AS A GUARANTEE OF FUTURE EMPLOYMENT." Furthermore, the re-application form read: "Textron Aerostructures reserves the right to employ applicants based on the requisite skills for the job and the availability of the positions." Textron insists that the re-application form was consistent with Textron's Reduction In Force Policy, which states in paragraph M:

> M. Employees notified of layoff are eligible to place bids, while they are still employed with the division, on any posted job provided they possess the necessary qualifications for that job and whose performance has met the basic requirements of their current position. Excessed employees who meet the above criteria are given preference over employees not affected by the layoff. Bids for posted jobs will be accepted from those employees notified of their layoff, up to and including their last working day, provided they conform to Procedure B–99, Salaried Job Opening Postings.

Plaintiff insists that he was qualified for the newly created Human Resources Generalist position. However, Textron contends that plaintiff was not selected for the position because he was not qualified. Specifically, Textron determined that plaintiff did not have sufficient generalist work experience or background in labor relations, staffing, compensation, benefits, and development.

It is undisputed that during plaintiff's tenure at Textron the company experienced a decline in its business which resulted in reductions in work force. Textron reduced the size of its work force from 7500 employees in 1985 to approximately 2500 in July 1990. More specifically, Textron reduced salaried employees by more than 400, and the Human Resources Department, the department in which plaintiff was employed, was reduced significantly.

Plaintiff relies on a statement made in 1985 by Textron's President, John Kleban, while delivering a speech to Textron management, as further evidence of age discrimination. During the speech Kleban announced that one objective for the Human Resources Department was to "establish and maintain a recruitment program that brings in new, young talent to ensure a base of future key contributors of new ideas and technology."

In his complaint plaintiff alleged that Textron discriminated against him twice due to his age. Textron's decisions to terminate him and not to hire him for the Human Resources Generalist position are the two bases for plaintiff's age discrimination claim.

We review this summary judgment decision de novo upon the record with no presumption of correctness. *Cowden v. Sovran Bank/Central*, 816 S.W.2d 741, 744 (Tenn. 1991).

## SUMMARY JUDGMENT

The Supreme Court recently espoused the proper summary judgment analysis to be applied in Tennessee in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993). We base our decision upon the summary judgment jurisprudence the Supreme Court set forth in that opinion.

In *Byrd v. Hall* the Supreme Court stated that Tennessee's summary judgment rule, Rule 56:

> was implemented to enable courts to pierce the pleadings and determine whether the case justifies the time and expense of a trial; that the party seeking summary judgment must carry the burden of persuading the court that no genuine and material factual issue exists; that the nonmoving party must affirmatively demonstrate with specific facts that there is indeed a genuine and material factual dispute; that the court must view the evidence in favor of the nonmoving party and allow all reasonable inferences in his favor; that trial judges are not to weigh the evidence; that the critical facts are those deemed "material" under the substantive law governing the case; and that summary judgment is to be used only when the resolution of the case depends upon the application of a legal principle, such that there is nothing to submit to the trier of

fact to resolve in favor of one party or the other.

*Byrd,* 847 S.W.2d at 214.

The Supreme Court further explained that "the issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed material fact creates a *genuine* issue for trial." *Id.* Therefore, to determine whether summary judgment was appropriate in this case, we must answer the three necessary questions, and we must follow the guidelines the Supreme Court set forth to do so.

We must first scrutinize the evidence to determine whether a factual dispute exists. If we find that "there is no dispute over the evidence establishing the facts that control the application of a rule of law, summary judgment is appropriate." *Id.* at 214–15. However, if we find a factual dispute exists, we must determine whether the disputed fact is "material." "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Id.* at 215. Finally, if we find a disputed, material fact, we must determine whether it creates a genuine issue for trial. *Id.* The Supreme Court defined this test as "whether a reasonable jury could legitimately resolve [the] fact in favor of one side or the other." *Id.* If a jury could not do so, "summary judgment is proper because a trial would be pointless as there would be nothing for the jury to do and the judge need only apply the law to resolve the case." *Id.* Furthermore, in making this determination, we must view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor. *Id.*

To make the foregoing determinations, we must examine the law of age discrimination and plaintiff's claim.

## AGE DISCRIMINATION

In an age discrimination suit, the ultimate issue is whether age was a determining factor in the employer's decision that adversely affected the employee. *See Bruce v. Western Auto Supply Co.,* 669 S.W.2d 95, 97

(Tenn.App.1984) (citing *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1180 (6th Cir. 1983)). We further note at the outset of this analysis that in an age discrimination case, the plaintiff retains the burden of persuasion at all times as to the ultimate issue of discrimination. *Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir.) *cert. denied,* — U.S. —, 113 S.Ct. 376, 121 ˙L.Ed.2d 287 (1992) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)).

Plaintiff bases his discrimination claim on two adverse employment decisions. We will first address Textron's decision to eliminate plaintiff's position and thus to terminate his employment.

## I.

An age discrimination plaintiff has the burden of establishing a *prima facie* case by using the traditional criteria set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) or through direct, circumstantial, or statistical evidence. *See Bruce,* 669 S.W.2d at 97; *see also Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 940 (6th Cir.1987). Once the plaintiff has established a *prima facie* case through either of these methods, the burden of proof shifts to the employer to rebut the presumption of discrimination by articulating a legitimate nondiscriminatory reason for the employment decision. *Silpacharin v. Metropolitan Gov't,* 797 S.W.2d 625, 629 (Tenn. App.1990); *Bruce,* 669 S.W.2d at 97. Once the employer has satisfied the burden of articulating a legitimate nondiscriminatory reason for its employment decision, the burden of proof again shifts to the plaintiff to prove that the employer's reason is a mere pretext or that the employer's proffered explanation is not worthy of belief. *Id.*

In the present case, Textron has "articulated" a legitimate nondiscriminatory reason for its employment decision. Therefore the burden has shifted to the plaintiff to demonstrate an issue of fact as to discrimination.

## McDONNELL DOUGLAS APPROACH

Traditionally, a plaintiff has established a generic *prima facie* of age discrimi-

nation by satisfying the criteria set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Therefore, we will address whether plaintiff satisfied his burden under the *McDonnell Douglas* approach first. Under *McDonnell Douglas*, a plaintiff must demonstrate that: (1) he was a member of the protected class; (2) he was subjected to adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person. *See also McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990); *Simpson*, 823 F.2d at 940; *Krause v. R.R. Donnelley & Sons Co.*, No. 89–296–II, 1990 WL 18186, 1990 Tenn.App. LEXIS 141 (Tenn.App.1990). "Proof of all four criteria raises a presumption of age discrimination." *Union Camp*, 898 F.2d at 1160.

It is undisputed that plaintiff satisfied the first three requirements under the *McDonnell Douglas* approach. Plaintiff was age forty-seven when he was terminated, and the Tennessee Human Rights Act prohibits an employer from discriminating in either the hiring or firing of an individual who is at least forty years of age. Tenn.Code Ann. § 4–21–401 *et seq.* Thus, plaintiff was a member of the protected class, he was terminated, and it is undisputed that he was qualified for the position he held at the time of his termination. However, we find that the undisputed evidence is clear that plaintiff was not replaced by a younger person.

After Textron eliminated plaintiff's position and terminated him, his duties and responsibilities were redistributed to existing employees in the Human Resources Department. Peggy Tollison, then thirty-seven years old, assumed many of plaintiff's responsibilities. Plaintiff admitted in deposition testimony that his duties as Manager of Training were redistributed to Peggy Tollison and Michael Pollen. "Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley*, 958 F.2d at 752. *See also Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (holding in a reduction in forces case: "[A] person is not replaced when another employee is as-

signed to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.") Thus, plaintiff has not created an issue of fact as to whether he was replaced by a younger person.

"[A]fter the moving party has established the absence of a genuine issue of material fact, then summary judgment is appropriate when, after being given a reasonable opportunity to substantiate its claims, the nonmoving party is unable to establish any essential element of its case on which it will have the burden of proof at trial." *Byrd*, 847 S.W.2d at 213 (stating the proposition for which *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) stands).

Moreover, the facts of this case present a special issue for this court. Textron insists that because this plaintiff was terminated during a company-wide reduction in force and a reorganization, he should be held to a higher burden. The Sixth Circuit has repeatedly held an age discrimination plaintiff who was terminated during a reduction in forces to a higher burden. *See Barnes*, 896 F.2d at 1465; *Simpson*, 823 F.2d at 941; *Chappell v. GTE Prod. Corp.*, 803 F.2d 261, 266 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987); *LaGrant v. Gulf & Western Mfg. Co.*, 748 F.2d 1087, 1090–91 (6th Cir.1984). Moreover, the Sixth Circuit has directed: "The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination." *Barnes*, 896 F.2d at 1465 (quoting *McMahon v. Libbey–Owens–Ford Co.*, 870 F.2d 1073 (6th Cir.1989), *LaGrant*, 748 F.2d at 1090 (6th Cir.1984); *Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1118 (6th Cir.1980). We agree with the Sixth Circuit in *Barnes*.

This court recently stated in *McDowell v. Shoffner Indus. of Tenn., Inc.*, No. 03A01–9301–CH–00030, 1993 WL 262846, 1993 Tenn.App. LEXIS 472 (Tenn.App.1993): "A work force reduction occurs when business conditions impel an employer to eliminate one or more positions." *Id.* This court further held in *McDowell* that "a duty is re-

posed upon the plaintiff [in a reduction in forces case] to produce direct, circumstantial evidence that his age was a determining factor in his termination ... He cannot rely in a purely mechanistic fashion upon the *McDonnell Douglas* analysis." *Id.*

Based on Tennessee and Sixth Circuit law which holds an age discrimination plaintiff to a higher burden and on our finding that plaintiff was not replaced by a younger person, an element of the *prima facie* case under *McDonnell Douglas,* we hold that summary judgment was appropriate under the *McDonnell Douglas* guidelines. Therefore, plaintiff must establish his *prima facie* case by using direct, circumstantial, or statistical evidence.

Tennessee courts and the Sixth Circuit have held that age discrimination suits should be decided on a case-by-case basis, rather than strict adherence to the *McDonnell Douglas* guidelines. *See Union Camp,* 898 F.2d at 1161; *LaGrant,* 748 F.2d at 1090; *Wright v. Lamar Advertising, Inc.,* No. 86–393–I, 1990 WL 37366, 1990 Tenn.App. LEXIS 224 (Tenn.App.1990). More specifically, instead of a rigid, *McDonnell Douglas* application, judges should:

> consider "direct evidence of discrimination, and circumstantial evidence other than that which is used in the *McDonnell Douglas* criteria." A plaintiff may present a prima facie case of age discrimination "by introducing evidence that he was adversely affected by the defendant's employment decisions 'under circumstances which give rise to an inference of unlawful discrimination.' "

*Union Camp,* 898 F.2d at 1161 (citations omitted).

Therefore, we will now examine plaintiff's claim under the direct, circumstantial, or statistical evidence approach to a *prima facie* case.

## DIRECT, CIRCUMSTANTIAL, OR STATISTICAL EVIDENCE APPROACH

Plaintiff relies on a combination of evidence, to establish his *prima facie* case under this approach. Tennessee law defines direct evidence as evidence that "proves a fact, or group of facts, without an inference, and which in itself, if true, conclusively establishes that fact." *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 445 (Tenn. 1992). Evidence is circumstantial in Tennessee "if it proves a fact from which an inference of the existence of another fact may be drawn." *Id.*

Plaintiff relies heavily on a statement and statistics to prove his case under this approach. The statement upon which plaintiff relies was made five years before his termination by the president of Textron. During a speech Mr. Kleban, then president of Textron, announced that one objective for the Human Resources Department was to "establish and maintain a recruitment program that brings in new, young talent to ensure a base of future key contributors of new ideas and technology." Plaintiff has also presented the following statistics: that from 1985 to 1990 the average age of salaried employees at Textron fell by 3.15 years, that in the Human Resources Department from 1985 to 1990 three salaried employees over the age of forty were terminated while only one salaried employee under the age of forty was terminated, and that during this time period in the Human Resources Department, two people over forty were demoted while no one under forty was demoted. As further evidence of age discrimination, plaintiff relies on the fact that Textron hired a twenty-seven-year-old male three months after his termination.

Based on the previously cited definition of direct evidence, we find the record is devoid of any such evidence which establishes age discrimination. Therefore, we are left to decide whether plaintiff met his *prima facie* case with sufficient circumstantial or statistical evidence to survive summary judgment.

■ In our review of plaintiff's circumstantial evidence, we first address the "new, young talent" statement upon which plaintiff relies. It is important to first note that the statement was made five years before plaintiff's termination. Moreover, the statement was made only once, and it was made before the company began to experience financial difficulties. "Case precedent clearly reflects

that isolated and ambiguous statements ... 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'" *Gagné v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989). Plaintiff insists, however, that his case is distinguishable from *Gagné* because the plaintiff in that case admitted that her supervisor's statement that he "needed younger blood" was made facetiously. The plaintiff also admitted that the statement was not directed at any particular individual. *See id.* We note that the "new, young talent" statement was also not directed at any particular individual. The fact that the statement in *Gagné* was made facetiously was not the sole rationale for the court's finding that the statement was insufficient evidence to support an age discrimination claim. The court also relied on the fact that the statement was isolated, made only once. *See id.* at 314, 315.

Although this court has previously held that statements by an employer can establish evidence of age discrimination, in this case we find the president's statement to be insufficient as a matter of law. In *Flynn v. Shoney's, Inc.* we found that remarks made by the plaintiff's superior were sufficient to take the case to the jury on the issue of age discrimination. *Flynn v. Shoney's, Inc.*, 850 S.W.2d 458, 460 (Tenn.App.1992). The plaintiff's superior in Flynn made the following statements: "that after restructuring it was 'out with the old and in with the new;' that for the same money Mr. Flynn was paid the company could hire a lot of 'eager young bucks right out of college;' and that it was a 'young man's business.'" *Id.* at 459. These statements were directed to the plaintiff and are much less susceptible of different interpretations. Moreover, we held that *"repeated* references to the employee's age by the company representative *while* informing the employee of his termination is some evidence from which the jury could infer that age was a factor." *Id.* at 460 (emphasis added). Hence, only one statement was made, and it was made five years before plaintiff was terminated. Plaintiff has not demonstrated the causal connection between the statement and his termination, as did the plaintiff in *Flynn.*

Plaintiff insists that even though the statement was made only once, it became the policy of the Human Resources Department. Plaintiff asserts that because the president of the company made the statement, the management of the Human Resources Department automatically adopted it. Plaintiff testified that it is common human resources practice for every subordinate to adopt his manager's objectives. However, even if we take this allegation as true, there is no evidence in the record that the "policy" adversely affected plaintiff or any other employee within the protected class.

■ Plaintiff attempts to establish the adverse effect of the Human Resources Department "policy" through the use of statistics. In his brief, plaintiff asserted that he was not trying to prove his whole case with the "new, young talent" statement. Instead, he argued it was the "combination of the Kleban statement with subsequent Textron personnel decisions affecting Brenner and other employees over the age of 40 that served as one way Brenner attempted to prove his case." Plaintiff further insists that "[s]tatistics regarding personnel decisions within the ... H[uman] R[esources] Department, as well as Textron as a whole, ... buttressed [his] case." We find, however, that neither plaintiff's statistics nor the applicable case precedent supports his case.

The Sixth Circuit in *Barnes,* espoused:

[a]ppropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class. To do so, the statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity.

*Barnes,* 896 F.2d at 1466. Plaintiff presented the following statistics for our review that from 1985 to 1990 the average age of salaried employees at Textron fell from 41.15 years to 38 years; that from 1985 to 1990 three people over forty were terminated and only one person under forty was terminated; and that two people over forty were demoted while none under forty was demoted. Specifically,

plaintiff supplied the following chart for our consideration:

AVERAGE AGE OF TEXTRON AEROSTRUCTURES'
SALARIED WORK FORCE

|  | June 1, 1985 | June 13, 1990 |
|---|---|---|
| Total Employees | 1516 | 1097 |
| Average Age | 41.15 | 38.00 |
|  |  |  |
| Total Employees Age | | |
| 40 and above | 790 | 581 |
| Average Age | 50.00 | 48.18 |
|  |  |  |
| Total Employees Under | | |
| Age 40 | 726 | 516 |
| Average Age | 31.51 | 26.55 |

Based on our review, we find these statistics do not support plaintiff's claim. According to the statistics supplied by plaintiff, the total number of salaried employees over age forty decreased, during the time period supplied, by 210, while the total number of salaried employees under age forty decreased by 209 during the same time period. Moreover, the total number of salaried employees over age forty in 1985 constituted 52% of the salaried work force, while the same group constituted 53% of the salaried work force in 1990. Thus, we find the statistics do not show a significant disparity, nor do they eliminate the most common nondiscriminatory explanation for any disparity—the reduction in forces.

As the court in *Simpson v. Midland–Ross* noted: "statistical evidence ... does not differ greatly from other types of proof." *Simpson*, 823 F.2d at 944. This evidence is relevant only when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R.Evid. 401. *Simpson* further directed that:

Statistics gain relevance in one of two ways: the statistics, standing alone, reasonably lead to a particular conclusion validated by human experience, or comparative statistics point out discrepancies in behavior that would cause the average person to scrutinize the employer's motives. Unless the statistics, standing alone or in comparison, are sufficient to lead the mind naturally to the conclusion sought, the have no probative value; they do not move the proof one way or another. "In short, their usefulness depends on all of the surrounding facts and circumstances."

*Simpson*, 823 F.2d at 944 (quoting *Teamsters v. United States*, 431 U.S. 324, 340, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977)).

The plaintiff in *Simpson* presented statistical evidence that the average employee age in his department decreased by approximately one year. The plaintiff presented further evidence that of those employees who left the company, 76.5% were over age forty and 23.5% were under age forty. The court concluded that the plaintiff's "statistical evidence, even if arguably supporting an inference of discrimination to establish a *prima facie* case, ha[d] insufficient probative value to support a jury verdict on the ultimate question of discrimination." *Simpson*, 823 F.2d at 943. The *Simpson* court further rejected "any assertion that a decreasing average employee age coupled with other questionable statistics proves the existence of impermissible age discrimination." *Id.* at 944. We agree with this rejection.

We further recognize the weakness in decreasing average age statistics due to the constantly changing work place. The average age of employees will perpetually vary. At times the average employee age may decrease. However, this fact in no way creates a presumption of age discrimination. Employees leave a company for various reasons, and the statistics plaintiff presented do not distinguish employees who were fired, retired, died, voluntarily resigned, changed jobs, etc. Thus, the statistics only show a change in the total number of employees and a decreasing employee age.

Based on the foregoing, we find plaintiff's statistics insufficient as a matter of law to create an issue for trial. Even when viewed in a light most favorable to plaintiff, we find plaintiff's statistics do not support his claim of discrimination.

## LEGITIMATE, NONDISCRIMINATORY REASON

■ Once a plaintiff has presented a *prima facie* case of age discrimination, the burden of proof shifts to the employer to rebut by articulating a legitimate, nondiscriminatory reason for its employment decision. *Silpacharin*, 797 S.W.2d at 629. "The burden is

not upon the employer to show an absence of age discrimination. The employer must simply produce evidence of legitimate nondiscriminatory reasons." *Bruce*, 669 S.W.2d at 97 (citation omitted).

It is undisputed that Textron suffered severe financial difficulties. It is further undisputed that due to these difficulties defendant instituted a reduction in forces. The total number of employees at Textron was reduced from over 7500 in 1985 to approximately 2500 in July 1990, a reduction of over 5000 employees. Furthermore, the Human Resources Department, the department in which plaintiff was employed, also reduced the number of its employees. Textron asserts that its reduction in forces due to economic necessity was the reason for eliminating plaintiff's position and thus terminating him.

This court has previously held that "[t]he purpose of T[ennessee] C[ode] A[nnotated] § 4–21–101 *et seq.*, [the Tennessee Human Rights Act], among other things, is to 'prohibit discrimination in employment' and not to restrict the employer's right to make bona fide business decisions." *Bruce*, 669 S.W.2d at 97 (citation omitted).

We find that employer/defendant meets its burden of articulating a legitimate, nondiscriminatory reason for its employment decision to terminate plaintiff.

### PRETEXT

■ Because Textron satisfied the burden of articulating a legitimate, nondiscriminatory reason for its employment decision, the burden of proof again shifts to plaintiff "to persuade the court that the defendant employer's reason is pretextual or that defendant employer's proffered explanation is not worthy of belief." *Silpacharin*, 797 S.W.2d at 629.

As evidence of pretext, plaintiff points again to the fact that Textron hired a twenty-seven-year-old male three months after his own termination. Plaintiff alleges that the Human Resources Generalist position, the position for which the twenty-seven-year-old male was hired, was created ten days after his termination. Plaintiff further contends that Textron's decision to advertise for the newly created position in the *Chicago Tribune* employment section, less than a month after his termination, creates additional support for his pretext argument. Plaintiff concludes that based on the foregoing, Textron's proffered reason for his termination is unworthy of belief and is a mere pretext. However, we disagree.

Even when we view the evidence in the light most favorable to plaintiff, we still find that Textron was undergoing a reduction in forces and reorganization. To establish pretext, "[t]he burden is on the plaintiff to prove by a preponderance of the evidence that the reason given by the employer was a mere pretext for what was ... a discriminatory purpose." *Silpacharin*, 797 S.W.2d at 631 (quoting *Bruce*, 669 S.W.2d at 97). To meet the pretext burden, plaintiffs are required to produce evidence that age was a factor in the employment decision and that "but for" this factor the action would not have been taken. *Gagné*, 881 F.2d at 314. Plaintiff did not meet this burden. Moreover, when we return to the fundamental issue, whether plaintiff's age was a determining factor in defendant's decision to terminate him, plaintiff failed to meet this burden also.

Therefore, we find summary judgment is appropriate on the issue of plaintiff's termination.

### II.

■ We now focus on the second basis of plaintiff's age discrimination claim: whether defendant discriminated against plaintiff in its decision not to re-hire him.

■ Plaintiff alleges that he presented a *prima facie* case of age discrimination arising out of Textron's denial of his re-employment application. Although our research reveals no case directly on point on the issue of refusal to re-hire, this court has defined the necessary elements for a *prima facie* case of refusal to hire. *See Wright v. Lamar Advertising, Co.*, No. 86–393–I, 1990 WL 37366, 1990 Tenn.App. LEXIS 224 (Tenn.App.1990) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). To establish a claim of discriminato-

ry refusal to hire, a plaintiff must demonstrate: (1) he belonged to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications he was rejected; and (4) after his rejection the position remained open and the employer continued to seek applicants of the plaintiff's qualifications. *See id.*

We find that plaintiff cannot establish a *prima facie* case of discriminatory refusal to re-hire. Plaintiff met the first of the four criteria due to his age. However, plaintiff cannot meet the second criterion. Plaintiff did submit a re-application, but he was deemed not qualified for the Human Resources Generalist position by superiors. We find sufficient evidence in the record to support Textron's claim that plaintiff was not qualified for the position.

The written job requirements for the Human Resources Generalist position are:

Bachelor's degree or equivalent years of specialized on-the-job experience. Requires a minimum of four (4) to seven (7) years manufacturing environmental experience in human resources, preferably experience will be as a generalist. If not, candidate must have had at least two (2) human resource disciplines of at least twenty-four (24) months duration each. The human resource disciplines which are considered as relevant are limited to: labor relations, staffing, compensation, benefit design, and/or organizational development. Must possess good communication skills and the ability to work effectively with employees of various organizational levels of accountability and differing degrees of scope of understanding.

Although plaintiff insists that he was qualified for the position, our review of the record does not support this insistence. Each of the Textron managers deposed in this suit testified that plaintiff was not qualified for the position. Specifically, they each testified that he lacked the generalist experience required and experience in a number of the human resource disciplines listed.

Plaintiff argues that based on the wording of the job description, he was qualified for the position because he met the minimum qualifications. He argues he had a bachelor's degree, at least ten years of specialized on-the-job experience, and at least ten years of Human Resources experience in the manufacturing environment. He further argues that these experiences were as a generalist and that he had experience of at least twenty-four months in the following human resource disciplines: labor relations; staffing; and organizational development.

As further support of his claim plaintiff also argues in his brief that the Supervisor of Employee Relations position was simply renamed Human Resources Generalist. Plaintiff asserts that because he held the Supervisor of Employee Relations prior to being named Manager of Training, he was qualified for the newly created position. Plaintiff attempts to buttress his argument by pointing to the fact that Maxie Garrett, the Supervisor of Employee Relations prior to the reduction in forces, filled one of the Human Resources Generalist positions. However, there is no evidence in the record concerning Mr. Garrett's qualifications. Moreover, we find no evidence in the record to substantiate plaintiff's claim that the Supervisor of Employee Relations position was simply renamed Human Resources Generalist. Plaintiff admitted in deposition testimony that the written substantive job descriptions for the two positions are different. He further admitted that the Human Resources Generalist position is broader in duties and qualifications required.

We recognize that an employer cannot avoid liability by changing a job title or by making minor changes to a job in an attempt to avoid liability. *See Barnes*, 896 F.2d at 1465 n. 10. This attempt could establish that the reduction in forces was itself a pretext. *Id.* However, Textron eliminated plaintiff's position entirely and plaintiff does not dispute this. Plaintiff argues that a position in the company which he did not hold at the time of his termination was simply renamed. He does not assert that his position as Manager of Training was renamed Human Resources Generalist.

Plaintiff's final argument on this point is that the job codes for the two jobs are the

same. Textron management argued however that this code had no significance to the actual job responsibilities and duties. Furthermore, we find no evidence, based upon plaintiff's own testimony and the testimony of Textron management, to support plaintiff's claim that the Supervisor of Employee Relations position was simply renamed Human Resources Generalist.

Even when we view the evidence in the light most favorable to plaintiff and find he arguably met the minimum qualifications for the Human Resources Generalist position, we still find summary judgment is appropriate.

Textron articulates as its legitimate, non-discriminatory reason for its decision to hire the twenty-seven-year-old male opportunity to substantiate his claim, plaintiff was unable to establish essential elements of his case upon which he would have the burden at trial. Therefore, summary judgment is appropriate. *See Byrd*, 847 S.W.2d at 212–13.

The judgment of the Chancellor is affirmed. Costs are assessed to the plaintiff/appellant, and the cause is remanded to the trial court for the collection of costs and any further necessary proceedings.

TODD, P.J., and KOCH, J., concur.