B&L CORPORATION d/b/a )
U.C. CONSULTANTS, )
                                 )

Plaintiff/Appellant, )        Appeal No.01-A-01-9506-CH-00274
                                 )

v. )        Davidson Chancery No.
                                 )        94-261-I
                                 )
                                 )

STEPHEN L. THOMAS and )
THOMAS & THORNGREN, INC., )
                                 )
                                 )

Defendants/Appellees. )

| FILED |
| :---: |
| **September 13, 1996** |
| **Cecil W. Crowson** |
| **Appellate Court Clerk** |

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

ON APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
HONORABLE IRVIN H. KILCREASE JR., CHANCELLOR

J. MICHAEL JACOBS
STEVEN B. McCLOUD
ATTORNEYS FOR THE APPELLANT
311 White Bridge Rd.
Nashville, TN    37209

CRAIG V. GABBERT
C. MARK PICKRELL
ATTORNEYS FOR THE APPELLEES
1800 First American Center
315 Deaderick St.
Nashville, TN    37238

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

SAMUEL L. LEWIS, JUDGE

# OPINION

## I.

This is the second appeal of a case involving a Nashville business, B&L Corporation, and four of its former employees. In 1994 B&L sued the four in the Chancery Court for Davidson County claiming they violated covenants not to compete, breached fiduciary duties, converted U.C. property, unfairly competed, and benefited from unjust enrichment. The chancery court granted one defendant, Kris Thorngren, summary judgment. B&L then appealed to this court, and we reversed the chancery court's judgment on several issues. [1] Later, the chancery court granted summary judgment in favor of defendant Stephen Thomas. The chancery court also granted the corporate defendant Thomas & Thorngren Inc.'s motion for summary judgment. B&L appeals from those judgments. B&L argues that the chancery court erred in ruling that Mr. Thomas' employment agreement expired prior to his departure from B&L. B&L also faults the chancery court's decision to grant Stephen Thomas and Thomas & Thorngren summary judgment, and to award Stephen Thomas his legal fees and costs. We have determined that Stephen Thomas, and Thomas & Thorngren Inc. are not entitled to summary judgment as to all of the issues in their case. Therefore, we partially reverse the chancery court.

## II.

The Appellant, B&L Corporation, (d/b/a U.C. Consultants) provides unemployment cost control and Targeted Job Tax Credit consultation to a national client base. Michael Brodbine organized B&L in 1981, and has been its primary manager since its inception.

---

[1] Appeal no. 01-A-01-9412-CH-00563, B&L Corp. d/b/a U.C. Consultants v. Thomas & Thorngren, et al. 1995 Tenn.App. LEXIS 555, (Tenn.Ct.App. 8/25/95).

B&L hired Stephen Thomas on January 9, 1982. On June 10, 1982, Thomas signed an employment agreement and began working as a vice-president. Mr. Thomas also became a 20% shareholder and a member of U.C.'s board of directors.

Mr. Thomas' position as vice-president and director afforded him direct access to B&L clients. He was privy to customer lists, contract rates, contract expiration dates, and other confidential information involving B&L's competitive secrets.

In late 1992, Michael Brodbine approached Steve Thomas and Kris Thorngren, also a vice-president at B&L. Brodbine discussed with them the possibility of B&L employees purchasing the company using an employee stock ownership plan. [2] Evidently, purchasing the company in the manner Brodbine described did not interest Thomas or Thorngren for in December of 1993, they formed their own corporation. Initially they named the entity K&S Services Inc. Mr. Thomas testified in his deposition that he and Mr. Thorngren rented office space, had telephone service installed, and arranged for some office equipment. Thomas and Thorngren also extended offers of employment to Defendant Gwen Benson and Jean Donnelly, then both employees of B&L as were Thomas and Thorngren.

On January 4, 1994, Thomas and Thorngren approached Mr. Brodbine with an offer to buy the company. Brodbine refused the offer, and an intense discussion ensued which culminated in Thomas and Thorngren leaving B&L's offices. It is unclear whether Brodbine fired Thorngren and Thomas, or whether the two quit of their own accord. However, both Thomas and Thorngren admitted to having cleaned out their desks and removed all personal possessions at B&L before the meeting with Brodbine.

Neither Mr. Thomas nor Mr. Thorngren disputes that their corporation is in direct competition with B&L. B&L claims that the competition has wrongfully resulted in many contract cancellations, and estimates that Thomas & Thorngren have usurped 50% percent of its

---

[2] An employee stock ownership plan is a vehicle to transfer ownership of a business to its employees via a sale of the company's stock.

gross revenues.

B&L sued its former employees on January 26, 1994. B&L's complaint sought monetary relief and injunctive relief on seven grounds. Count one alleges that Thomas, along with the other individual defendants Kris Thorngren, Gwen Benson, and Jean Donnelly violated non-competition agreements with B&L. Count two alleges breach of fiduciary duties by the defendants. Count three alleges that the defendants converted personal property owned by B&L. Count four alleges tortious interference with contract. Count five alleges unfair competition. Count six alleges unjust enrichment, and count seven requests injunctive relief.

B&L alleged two causes of action against Thomas & Thorngren Inc.: first, that Thomas and Thorngren procured the breach of certain contracts; and second, that Thomas & Thorngren, have been unjustly enriched.

The chancery court determined that the non-compete covenants signed by Stephen Thomas expired by 1986. On February 3, 1995, the court granted defendant Thomas' and Thomas & Thorngren Inc.'s motion for summary judgment. Finally, on March 10, 1995, the court granted defendant Thomas' motion for an award of attorneys fees and costs. B&L then initiated this appeal.

**III**.

This court reviews summary judgment decisions *de novo* upon the record with no presumption of correctness. ***Brenner v. Textron Aerostructures,* 874 S.W.2d 579, 582 (Tenn.App. 1993).** We evaluate whether the requirements of Tenn.R.Civ.P. 56 have been met. Those requirements include: 1) whether a factual dispute exists, 2) whether the disputed fact is material to the outcome of the case, and 3)whether the disputed material fact creates a genuine

4

issue for trial. *Id. citing Byrd v. Hall,* **847 S.W.2d 208 (Tenn. 1993).** In making these determinations, the court must view the evidence in a light most favorable to the non-moving party and allow all reasonable inferences in his favor. *Id.*

Summary judgment is appropriate when there is no genuine issue of disputed material fact and the moving party is entitled to judgment as a matter of law. Tenn.R.Civ.P. 56.03; *Byrd v. Hall at 214.* A fact is "material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Id. at 215.* A "genuine issue" of material fact exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.* The party seeking summary judgment must demonstrate to the court that there is no genuine issues of material fact for trial and that they are entitled to judgment as a matter of law. *Id.* If the moving party carries this burden, the non-moving party must then come forward with specific facts that rebut the moving party's argument and establish the existence of a genuine issue of material fact. *Id.* Mere allegations or general denials will not suffice to rebut a moving party's well-supported arguments. Tenn.R.Civ.P. 56.05.

**IV.**

The chancery court determined that Stephen Thomas' employment contract terminated after one year and that the non-competition provision of that contract expired no more than two years after that date. Mr. Thomas' employment agreement provided in part:

Term of Employment

The term of Executive's employment hereunder commenced on the 9th day of January, 1982, and shall continue thereafter for a period of one (1) year, or until the next regular annual shareholders meeting, now scheduled for the third Wednesday in October, 1982, at which time the contract may be renewed or renegotiated between the Corporation's Board of Director's and Executive.

Covenant Not to Compete

5

In consideration of the employment hereunder, Executive hereby agrees that during the term of his employment by the Corporation and for a period of two (2) years after the termination of said employment, Executive will not directly or indirectly own, have a proprietary interest of any kind in, be employed by, or serve as a consultant to or in any other capacity, engage in the business of tax compensation consultation without the express written consent of the Corporation. Executive agrees that breach of this covenant contained herein shall result in irreparable and continuing damage to the Corporation for which there is no adequate remedy at law and in the event of any breach of any such agreement, the Corporation shall be entitled to injunctive and such other an further relief, including damages, as may be proper. This covenant shall not apply if Corporation refuses to offer to extend this contract after the expiration of its terms.

We believe the chancery court was correct in finding that the employment contract terminated after one year. The contract states the "*term of Executive's employment hereunder commenced on the 9th day of January 1982, and shall continue thereafter for a period of (1) year,* or until the next regular annual shareholders' meeting . . . at which time the contract may be renewed or renegotiated between the Corporation's Board of Directors and Executive." B&L's Board of Directors never renewed or renegotiated Mr. Thomas' contract. Thus, we consider the term of Mr. Thomas' contract to have been one year, expiring on January 9, 1983.

The non-competition provision in the contract states "*during the term of his employment by the Corporation and for a period of two (2) years after the termination of said employment, . . .*" Since the plain meaning of the contract suggests that the term of Mr. Thomas' contract was one year, a two year period after termination of *said employment* would conclude on January 9, 1985. We believe the contract contains no ambiguity concerning expiration and therefore do not consult any legal rules of construction. We note however, that if we did seek a rule of construction, we would observe precedent which disfavors non-competition agreements, and strictly construes them against the employer. **Allright Auto Parks, Inc. v. Berry, 409 S.W.2d 361 (Tenn. 1966).**

Mr. Thomas and Mr. Thorngren acted in concert in their final days at B&L and afterwards in their new enterprise. Legally and factually this appeal and the Thorngren appeal are nearly identical. Therefore, the law of the case doctrine applies. This doctrine provides we must follow

6

a final decision or decree on a former appeal in later proceedings of the same case as long as the evidence remains substantially the same. *City of Chattanooga v. Rogers,* **299 S.W.2d 660 (Tenn. 1957);** *Jones v. Jones,* **784 S.W.2d 349, 351** *n*.**1 (Tenn.Ct.App. 1989).** The law of the case doctrine is based on the public policy against reopening matters that have been finally decided. Thus, we will apply the same holdings to the Thomas appeal as we did in Throngren appeal as the remaining issues are indistinguishable.

With regard to whether Mr. Thomas breached his fiduciary duty, converted tangible property of B&L, or was unjustly enriched, we must reverse the chancery court's decision to grant Mr. Thomas' motion for summary judgment. We remand the case for a trial on the merits in complete conformity with our previous ruling. As to the issues of Thomas procuring the breach of B&L client contracts and enjoying unjust enrichment, we again hold that those inquiries should be incorporated into the breach of fiduciary duty examination at trial.

The chancery court granted summary judgment for Thomas & Thorngren Inc. B&L had alleged two bases for holding Thomas & Thorngren Inc. liable: procurement of breach of contract and unjust enrichment. Thomas & Thorngren Inc. does not have a fiduciary relationship with B&L, and thus owe them no duty. However, we leave open the question of whether Thomas & Thorngren Inc. has been unjustly enriched or whether it has procured the breach of B&L's contracts. Therefore, we reverse the chancery court and remand this issue for trial.

We note that in the Thorngren appeal we held that we would not recognize a claim for the conversion of intangible property. Nevertheless in its brief B&L states that Mr.Thomas "has converted the business good will which U.C. has developed with several of its clients." We maintain that there is no authority in Tennessee for a claim of conversion of intangible property. Thus we affirm the chancery court to the extent it granted Mr. Thomas' motion for summary judgment as to the conversion of intangible property.

**V.**

7

Lastly, we turn to the issue of attorneys fees and court costs. The chancery court awarded Mr. Thomas $37,149.94 to defray his legal expenses. The court stated that "under the terms of Thomas' employment contract, the losing party to a suit involving enforcement of the contract must pay the winning party's attorneys fees." As in the Thorngren appeal we disagree and reverse. The employment agreement expired on January 9, 1983, and no longer governs the conduct of the parties. The chancery court also taxed costs to B&L. The discretion exercised by the chancery court in adjudging costs is subject to review in the appellate courts which should not reverse except in case of clear abuse. *J.M. Huber Corp. v. Square Enterprises Inc.,* **645 S.W.2d 410, 416 (Tenn.Ct.App. 1982);** *Bransetter v. Poynter,* **222 S.W.2d 214 (Tenn.Ct.App. 1949).** We are not inclined to disturb the award in this instance.

For the foregoing the judgment of the trial court is reversed in part, and affirmed in part. The case is remanded to the trial court for further proceedings consistent with this opinion. We tax costs on appeal to the Appellees.

_____
SAMUEL L. LEWIS, J.

CONCUR:

_____
HENRY F. TODD, P.J. M.S.

_____
BEN H. CANTRELL, J.

8