IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 8, 2006 Session

## GLENDA J. WHITE v. FORT SANDERS-PARK WEST MEDICAL CENTER

**Direct Appeal from the Circuit Court for Knox County**
**No. 3-92-04     Hon. Wheeler A. Rosenbalm, Circuit Judge**

**No. E2006-00330-COA-R3-CV  - FILED JANUARY 29, 2007**

Plaintiff sued her former employer on grounds of breach of contract, retaliatory discharge, and violation of the Tennessee Human Rights Act, as well as the Tennessee Public Protection Act. The Trial Court granted defendant summary judgment. Plaintiff appealed and we affirm the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

David H. Dunaway, LaFollette, Tennessee, for appellant.

Jay W. Mader, Knoxville, Tennessee, for appellee.

## OPINION

Plaintiff alleged breach of an implied employment contract and violation of the Tennessee Human Rights Act, as well as a claim for retaliatory constructive discharge.

Specifically she averred that she was 56 years old, and had been employed by defendant for 29 years, and that on January 14, 2004, after having complained of unsafe and understaffed working conditions, she was suspended, and placed in a false light by false accusations and defamatory statements. She averred that she was given the option of being terminated, resigning, or transferring to Parkwest Breast Center, where she would have to work longer hours for less pay.

Defendant, Fort Sanders-Parkwest, answered[1], asserting that plaintiff was an employee at will with no employment contract, and that defendant had a legitimate, non-discriminatory reason for its actions involving plaintiff, and that plaintiff resigned voluntarily, after being suspended for giving medication outside the scope of her LPN license. Defendant further stated that plaintiff was offered other employment within the system, but she turned it down.

Defendant moved for summary judgment and filed several supporting affidavits, as well as a Statement of Material Facts wherein it stated that plaintiff was employed as an LPN and that she could not administer medication without a doctor's order. Defendant stated that on December 4, 2003, a patient of Doctor Webber was in plaintiff's care, and that the doctor's written order stated "call if complains of pain". Defendant stated that a nurse is not allowed to give pain medication under a standing order if the doctor has given a specific order. Defendant stated that the patient complained of pain and plaintiff gave the patient a lortab without waiting for a doctor's order. Further, that plaintiff removed the patient's tegaderm dressing and allowed her to shower, although the doctor's order did not authorize removal of the dressing. Further, that the doctor had complained about this, as well as the fact that plaintiff reportedly told the patient she did not need physical therapy, when the doctor had ordered it. The statement continued that plaintiff had been reprimanded in December of 2002 for a scope of practice violation, and told that any further violation of hospital policy would result in immediate termination. Defendant stated plaintiff was suspended on December 5, 2003, but was later offered a transfer to the breast center or resign or be fired. Defendant stated that plaintiff sent a letter of resignation on January 13, 2004 and that plaintiff did not have an employment contract and was an employee at will.

Plaintiff also filed affidavits supporting her position, and filed a Response to defendant's statement of material facts, disputing that an LPN could not administer pain medication for a standing order if the doctor put in the order to call if the patient complained. Plaintiff maintained that the nurse was to call for instructions, but if the doctor did not call back and the patient was in distress, the nurse could go ahead and administer pain medication per a standing order. Plaintiff admitted that the orders regarding Dr. Webber's patient did not mention removal of the tegaderm dressing, but stated that the orders did say to remove a gauze dressing and replace with a gauze dressing, which she did, and that the orders were unclear. She stated that she only told the patient that she did not need to go to the physical therapist in the hospital, because she was going to Dr. Webber's office for a post-operative visit, and would receive instructions regarding physical therapy there. She also disputed there was no employment contract.

Following a hearing on the Motion for Summary Judgment, the Trial Court ruled that plaintiff did not have an employment contract with defendant, and was an employee at will, and held that defendant was entitled to judgment as a matter of law on plaintiff's claims of breach of contract, and that the activities complained of did not constitute "illegal activity", as set forth in the Tennessee Public Protection Act, Tenn. Code Ann. §50-1-304(c), and that plaintiff was not fired but voluntarily

---

[1]Dr. George Webber was also named as a defendant, but was subsequently non-suited without prejudice.

resigned, so defendant was entitled to judgment as a matter of law on plaintiff's claims of a violation of the Public Protection Act, as well as the alleged violations of the Tennessee Human Rights Act.

Plaintiff has appealed and raises these issues:

1.  Did the trial court improperly find that there were no genuine issues of material fact with respect to plaintiff's breach of contract claim, and that defendant was entitled to summary judgment regarding same?

2.  Did the trial court improperly find that there were no genuine issues of material fact with respect to plaintiff's claims under the Tennessee Public Protection Act, and that defendant was entitled to summary judgment regarding same?

3.  Did the trial court improperly find that there were no genuine issues of material fact with respect to plaintiff's claims under the Tennessee Human Rights Act, and that defendant was entitled to summary judgment regarding same?

4.  Did the trial court improperly find that there were no genuine issues of material fact with respect to plaintiff's claims of intentional infliction of emotional harm, and that defendant was entitled to summary judgment regarding same?

5.  Did the trial court improperly find that there were no genuine issues of material fact with respect to plaintiff's claims of false light invasion of privacy, and that defendant was entitled to summary judgment regarding same?

6.  Did the trial court improperly find that there were no genuine issues of material fact with respect to plaintiff's claims of willful and wanton misconduct and conspiracy, and that defendant was entitled to summary judgment regarding same?

7.  Did the trial court improperly find that there were no genuine issues of material fact with respect to plaintiff's claim of common law retaliatory discharge, and that defendant was entitled to summary judgment regarding same?

The standard for reviewing summary judgment is well explained by this Court:

The standard of review with respect to a trial court's ruling on a motion for summary judgment is well settled. Summary judgment is only proper when the

-3-

moving party has demonstrated that there are no genuine issues with respect to the material facts relevant to the claim or defense contained in the motion and the moving party is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). Because our inquiry in determining the propriety of a summary judgment involves purely a question of law no presumption of correctness attaches to the trial court's judgment. *Hunter v. Brown*, 955 S.W.2d 49 (Tenn. 1997). In assessing evidence in the summary judgment context we must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor and a summary judgment should be granted only when the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion. *Byrd, ibid.*

*Messer Griesheim Industries, Inc. v. Cryotech of Kingsport, Inc.,* 131 S.W.3d 457, 462 (Tenn. Ct. App. 2003).

Plaintiff asserts that there are genuine issues of material fact as to her breach of contract claim. While she concedes she had no written contract of employment with defendant, she insists she had a "legitimate expectation of continued employment" that was based on "duties of good faith and the like". She cites *Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924 (Tenn. Ct. App. 1984), for the contention that an implied contract of employment existed.

In *Price*, the plaintiff was an employee of the defendant, and had a written contract of employment for an indefinite term that was terminable at will, but also asserted that another contract existed because his employer told him he would never have to worry about his employment due to the good service he had rendered to the company in the past. *Id.* On appeal, we stated that while an oral contract of employment could exist and was not barred by the statute of frauds, the employee would have to show that the agreement was supported by adequate consideration, that there was a mutual assent to the terms of the agreement, and that it was sufficiently definite to be enforceable. *Id.* We held that Price could not show the existence of a valid contract, because his past service was inadequate consideration, and he could not describe the terms of the agreement with any specificity. We stated that the employer's statements about job security "did not rise to the level of a contract but rather were statements of encouragement and approval of Mr. Price's work at that time." *Id.* at 933.

In this case, plaintiff has not described the terms of any alleged contract with specificity, has not shown that the agreement was supported by adequate consideration, and has not shown mutual assent to any terms. She asserts that the alleged understaffing created a situation which exacted "additional" services from her in addition to the agreement (as was alleged but not proven in *Price*), but having shown no terms of an agreement and no mutual assent, she was unable to show that the alleged understaffing constituted "additional" consideration. We affirm the Trial Court's grant of summary judgment on plaintiff's breach of contract claims.

Plaintiff alleges that she was retaliated against for her complaints of

-4-

understaffing/unsafe working conditions, and that she was ultimately constructively discharged for that reason, which was a violation of the Public Protection Act. The Trial Court found that the understaffing that plaintiff complained of did not constitute "illegal activities" as set forth in the Tennessee Public Protection Act, Tenn. Code Ann. §50-1-304(c), and that plaintiff was not fired but voluntarily resigned.

The Tennessee Public Protection Act, codified at Tenn. Code Ann. §50-1-304, provides:

(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

\*      \*      \*

(c) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

(d)(1) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

Under the Act, plaintiff must show that she was terminated, and that an exclusive causal relationship exists between her termination and her refusal to participate in or remain silent about "illegal activities", as they are defined in the statute. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528 (Tenn. 2002).

Plaintiff asserts that there are state regulations[2] that require "adequate numbers" of nurses to provide the needed care to patients, and that the hospital failed to have an adequate number of nurses on the date that plaintiff and her co-workers complained, thereby creating an unsafe condition for the patients. Defendant argues the regulations do not mandate a specific nurse/patient ratio, but as the Supreme Court has recognized, the protection of the TPPA extends to "employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it." *Mason v. Seaton*, 942 S.W.2d 470 (Tenn. 1997). The regulations which plaintiff complains were violated were clearly "intended to protect the public health, safety or welfare", as they deal with having adequate numbers of nurses available to care for patients. When reviewing a grant of summary judgment, we are required to view all of the pleadings, depositions, affidavits, etc., in the light most favorable to the opponent of the motion, and draw all legitimate conclusions from the record in the opponent's favor. *Price*. The record establishes that plaintiff has created a genuine issue of fact with regard to whether illegal activities existed.

---

[2]Tenn. Reg. Rule 1200-8-1-0.6(4).

Plaintiff must also demonstrate genuine issues of fact with regard to the other elements of a claim under the Public Protection Act, including whether she was constructively discharged, and whether an exclusive causal relationship exists between her discharge and her alleged whistleblowing activity. Tenn. Code Ann. §50-1-304. She concedes that if the defendant is able to show a legitimate, non-discriminatory reason for the discharge, she must show that the proffered reason had no basis in fact, did not actually motivate the discharge, or was insufficient to motivate discharge. *Forrest v. City of Ridgetop*, 2003 WL 21954195 (Tenn. Ct. App. Apr. 15, 2003). She further admits that the employee "cannot rely upon conclusory statements or the employee's subjective interpretation of the employer's actions to create a material factual dispute", but must present "specific admissible facts, which realistically challenge the employer's reason for the termination of the employee."

As to the claim of constructive discharge, both parties agree that plaintiff must show that the "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996)(a hostile work environment case wherein the Court stated that the conditions had to be "intolerable" to support a claim of constructive discharge). This Court has also discussed the elements of a claim of constructive discharge as follows:

> Courts today recognize two varieties of constructive dismissal. HOLLOWAY & LEECH, at 79; 2 MARK A. ROTHSTEIN, EMPLOYMENT LAW § 8.7, at 256 (2d ed 1999); Ralph H. Baxter, Jr. & John M. Farrell, Constructive Discharge--When Quitting Means Getting Fired, 7 Employee Rel. L.J. 346, 352-57 (1981). The first, and currently most frequently encountered, variety appears in the context of hostile work environment discrimination claims. In these cases, a constructive discharge arises when an employer permits a hostile working environment to render an employee's working conditions so intolerable that resignation is the employee's only reasonable alternative. E.g., *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 34-35 (Tenn.1996). This case does not involve that variety of constructive discharge.
>
> The second variety of constructive discharge, and the one implicated in this case, involves the demotion of executive employees who have a position-specific contract. Professor Corbin points out that an employment contract may involve a position of dignity and privilege and that these contracts are breached when an employer reduces an employee to an inferior status. He observes that
>
>> [o]ne who has been hired to be superintendent or general sales manager would generally be justified in quitting if he [or she] is ordered to act as floorwalker or sales clerk, even though the salary is not reduced. Such an order would also frequently be held to be a wrongful discharge by the employer.
>
> 8 CATHERINE M.A. MC CAULIFF, CORBIN ON CONTRACTS § 34.10, at 256

(Joseph M. Perillo ed., rev. ed.1999). Accordingly, when an employee with a position-specific employment contract resigns after the employer forces the employee to choose among demotion, termination, or resignation, the employer remains liable for breach of contract unless the facts clearly demonstrate a fairly bargained for release of the employer. Kass v. Brown Boveri Corp., 488 A.2d 242, 245 (N.J.Super.Ct.App.Div.1985)

*Walker v. City of Cookeville*, 2003 WL 21918625 (Tenn. Ct. App. Aug. 12, 2003).

Plaintiff insists that her working conditions were so intolerable that she had no choice but to resign. She stated that she would have suffered the loss of her shift differential, her working hours she considered to be unfavorable, and that she would not have been able to dispense medicine. Aside from the conclusory nature of her concerns, and assuming the truth of her stated facts, they do not rise to the level of being so difficult, unpleasant, or intolerable that they forced her to quit her employment, as contemplated in *Campbell*. Changes in duties or benefits which make it more difficult or inconvenient for the employee do not generally rise to the level of a constructive discharge. *See, e.g.*, *Stalsworth v. Dixie Cement Co.*, 1991 WL 51401 (Tenn. Ct. App. Apr. 11, 1991); *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535 (6th Cir. 2002). Plaintiff is describing the type of loss of "position of dignity and privilege" that is discussed in the *Walker* case, but since she did not have a position-specific employment contract, she cannot prove that type of constructive discharge claim.

Next, she complains that there was some "cloud" placed over her head regarding the dispensation of the lortab and the possibility that she might have been abusing drugs herself. Plaintiff did not established this as a fact, she simply presented her own subjective belief about this possibility. As stated, plaintiff "cannot rely upon conclusory statements or the employee's subjective interpretation of the employer's actions to create a material factual dispute". *Forrest v. City of Ridgetop*, 2003 WL 21954195 (Tenn. Ct. App. Apr. 15, 2003).

It is undisputed that plaintiff never even met with the person who would have been her supervisor at the Breast Center to discuss hours, salary, or other benefits or duties of the job, and she cannot ultimately show what her duties, hours, or benefits would have actually been. *See, e.g., Fischhaber v. General Motors Corp.*, 436 N.W.2d 386 (Mich. App. 1989). She stated in her deposition that she understood that she would have the same base rate of pay, but thought she would not get the shift differential of three dollars per hour, and she understood that she would have to work five days per week instead of three. However, she admitted that she was not told she would not be receiving the shift differential, and while she testified she understood she could not give medication at the Breast Center, she admitted that she was only told "you won't have to give lortab over there." She also admitted that she failed to attend a meeting that was set up for her with the director of the Breast Center to discuss the conditions of her continued employment.

While we must draw all reasonable inferences in plaintiff's favor, the record does not enable us to infer plaintiff's circumstances would have been intolerable if she continued her

employment, when she had no idea of what her actual working circumstances would have been, and her subjective complaint does not support a basis for such an inference. *See Forrest. Also see, Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924, 930 (Tenn. Ct. App. 1984).

The linchpin of plaintiff's action was to offer material evidence of a constructive discharge, since she had no contract for continuing employment. This she failed to do and therefore cannot offer material evidence of a violation of the Tennessee Consumer Protection Act, since that statute requires a discharge to be actionable.

Plaintiff further argues that there is material evidence of a violation of the Tennessee Human Rights Act based on age discrimination. She avers that she was replaced by a younger person. In order to prevail, she would have to show that she was subjected to an adverse employment action. *Brenner v. Textron Aerostructures*, 874 S.W.2d 579 (Tenn. Ct. App. 1993). There are no facts in this record to establish that she was replaced at all, much less by a younger person. She claims she was told by a friend that she was replaced by a nurse in her forties, but had no information regarding the person's name or actual age. The evidence to establish a material fact must be admissible in evidence, Tenn. R. Civ. P. 56.[3]

Plaintiff also asserts that the Trial Court erred in granting summary judgment on her claim of intentional infliction of emotional distress. As we have stated:

> The tort of outrageous conduct "exists only where (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury."

*Newsom v. Textron Aerostructures*, 924 S.W.2d 87, 98 (Tenn. Ct. App. 1995).

As the Trial Court found, plaintiff has alleged no conduct which would rise to the level described in the case. We affirm the Trial Court on this issue.

While our Supreme Court has recognized the tort of false light invasion of privacy, as a separate and distinct tort from defamation in *West v. Media General Convergence, Inc.,* 53 S.W.3d 640, 646 (Tenn. 2001), the publication of information must go outside the employer for the claim to succeed. Plaintiff's sole assertion in this regard is that she heard there was a nurse at Methodist Medical who said she knew about a nurse at Parkwest who was fired after 29 years of service for giving a lortab. Plaintiff conceded that she had no proof that this information came from

---

[3]Defendant responded to plaintiff's claims with an affidavit stating that two RNs were hired after plaintiff resigned, that one was aged 50 and the other 52, and that plaintiff's duties had been absorbed by existing personnel after she resigned. We have held that spreading former duties of a terminated employee among remaining employees does not constitute replacement." *See Brenner,* at 584.

anyone at Parkwest, and also admitted that she personally discussed the matter with Tonni Roberts, who worked at Methodist. While plaintiff claims in her brief that the data was transmitted "somehow" to Methodist at a time when the data was "wholly in the hands" of Parkwest's agents, she has alleged no facts to support her claim of false light invasion of privacy.

Plaintiff further claims the Trial Court erred in dismissing her claims for willful and wanton misconduct and conspiracy. The Trial Court found that plaintiff's allegations on these claims did not "add anything to her case or her right to recover against Parkwest". The defendant asserts, and plaintiff concedes, conspiracy is not a claim that can stand alone, and if the underlying cause of action fails, the conspiracy claim must also fail. *Levy v. Franks*, 159 S.W.3d 66 (Tenn. Ct. App. 2004). Plaintiff's other claims having failed, cannot maintain a claim for conspiracy. This issue is also without merit.

Finally, she argues that she has a common law claim for retaliatory discharge. Assuming *arguendo* that a separate claim of action still exists for common law retaliatory discharge in addition to an action based on the TPPA (*see Guy*), to state a claim for such also requires a showing that plaintiff was discharged. Since plaintiff's claim of constructive discharge fails, her claim of common law retaliatory discharge must also fail. The Trial Court properly granted summary judgment on this issue as well.

For all the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of appeal assessed to Glenda J. White.

_____
HERSCHEL PICKENS FRANKS, P.J.