IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2002 Session

## PHILLIP JESSEE, ET AL. v. AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY

**Appeal from the Chancery Court for Sullivan County
Nos. 27985M & 28109L   John S. McLellan, III, Judge, Sitting as Chancellor**

**FILED JANUARY 24, 2003**

**No. E2002-00182-COA-R3-CV**

---

In this case of alleged age discrimination case from the Chancery Court for Sullivan County the Plaintiffs/Appellants, Phillip Jessee and James O. Morse, argue that the Trial Court erred in refusing to grant their request for a continuance, in its admission and exclusion of certain evidence and in its dismissal of their cause of action against the Defendant/Appellee, American General Life and Accident Insurance Company.  We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

James H. Beeler, Kingsport, Tennessee, for the Appellants, Phillip Jessee and James O. Morse

Robert L. Arrington, Kingsport, Tennessee, and Mary Kampa, Nashville, Tennessee, for the Appellee, American General Life and Accident Insurance Company

**OPINION**

The Defendant, American General Life and Accident Insurance Company, is an insurance company with an office in Kingsport, Tennessee and various other locations around the country. The Kingsport district of the Defendant is one of twenty one districts within the company's Blue Ridge region.

The hierarchy of authority pertinent to the Kingsport district of the Defendant was, at all times relevant to this case, as follows. The district was divided into four staffs composed of a total of 27 agents.  Each agent was under the supervision of a staff manager who reported to the district manager.  The district manager reported to the regional director who was required to report to the corporate senior vice president and chief marketing officer whose office was located in Nashville.

From 1989 until 1996, Mr. Morse was employed by the Defendant as regional director of the Blue Ridge region and Mr. Jessee was employed as district manager of the Kingsport district. Both Mr. Morse and Mr. Jessee were fifty-five years of age when the events in this case transpired.

The Defendant offers its sales agents strong financial incentive in the form of bonuses and expense paid trips to make sure that policyholders do not allow policy cancellation or lapse because of failure to pay premiums. However, as specified in sales employee employment agreements between the Defendant and its agents, sales agents are not allowed to "personally pay the premium for any policy of which the Sales Employee is not the owner, unless required by judicial order." Testimony was presented at trial that Mr. Jessee had witnessed the execution of several of these agreements and that it "would have been a part of the ordinary routine that a district manager would have had to go through [the employment agreement] with every new agent that came on and discuss it with them as they were employed and then have them execute it at that time to enter into the contract." There was additional evidence presented at trial that in 1993 the Defendant formulated and adopted a code setting forth, among other things, the company's policy that employees disclose all facts related to company business in full detail and that employees "record all account transactions accurately and promptly."

In late 1995 inquiries from a Kingsport agent, Mark Jones, prompted the Defendant's compensation department to review the records of agents within the Kingsport district. It appeared from this review that Mr. Jones and certain other Kingsport agents might be acting in derogation of company policy by delaying the turnover of premiums to the company and by personally paying premiums to keep policies in place. This was reported to the Defendant's chief marketing officer, Don Tasser who contacted Sam Billante, vice president of marketing administration, and instructed him to direct Mr. Jessee to conduct further investigation relative to the findings of the compensation department. In compliance with these instructions, Mr. Billante contacted Mr. Jessee and directed him to investigate transactions of agent Jones for evidence that Mr. Jones might have paid policy holder premiums out of his own pocket.

Mr. Jessee subsequently reported to Mr. Billante that he had found nothing irregular in Mr. Jones' transactions; however, Mr. Billante deemed that Mr. Jessee's investigation was unsatisfactory and incomplete, in part because Mr. Jessee had neglected to contact customers to verify premium payments. Mr. Billante advised Mr. Tasser of his concerns, whereupon, Mr. Tasser contacted Mr. Morse to pursue further investigation in which regard Mr. Tasser testified as follows:

Q. All right. Tell us about what your involvement with Mr. Morse was at that point, Mr. Tasser.

A. I told Jim of the incident, what happened, and I said, "Jim, I want you to go in and to investigate and audit the agencies involved to see if there's a possible problem there," and Jim – and I said, "Jim, this is very serious, and I want to tell you up front that if you don't do this correctly, it can be your rear end."

Q. All right. What did he say?

A. He said, "Don, I'll handle it."

Mr. Tasser further testifies that, thereafter, Mr. Morse reported back to him that, pursuant to his investigation, he had discovered no problems in the Kingsport district.

A routine internal audit of the Kingsport district was conducted by the Defendant's independent audit department in March of 1996. As a result of this audit it was determined that agents had manipulated the Defendant's system of bonus compensation by making policy premium payments from their personal funds in order to receive credits necessary for bonus eligibility. Several of these agents then admitted that they had made such premium payments and signed statements to that effect. Tracy Burton, a staff manager in the Kingsport district, also acknowledged and signed a statement that he was aware that some agents had been paying premiums.

In light of the audit results, the Defendant's chief executive officer and the Defendant's corporate president, with input from Mr. Tasser, decided that the involved agents should be disciplined by adjustment of their compensation and by withdrawal of trips and awards.

It was further decided that, because of their failure to properly supervise employees under their command and to take action required for discovery of the problem revealed by the audit, the management employees should suffer demotions. Accordingly, on April 11, 1996, Mr. Morse was demoted from regional director to management training associate, Mr. Jessee was demoted from district manager to staff manager and Mr. Burton was demoted from staff manager to sales agent. All these demotions were without reduction in base compensation.

After his demotion Mr. Jessee was absent from work for several weeks because of illness and Mr. Burton was allowed to manage the staff during this period. By letter dated July 3, 1996, Mr. Jessee announced his retirement from the Defendant and his retirement became effective on October 1, 1996.

Mr. Morse continued his employment as district manager until his retirement on November 1, 1998.

In February and April of 1997, Mr. Jessee and Mr. Morse respectively filed separate complaints in the Chancery Court for Sullivan County in which they asserted that the Defendant had violated the Tennessee Human Rights Act by engaging in age discrimination. The cases were consolidated by order of the Trial Court filed on July 8, 1997.

On May 18, 2000, Mr. Jessee and Mr. Morse filed a motion to amend their complaints to, among other things, assert a claim on behalf of Mr. Morse based upon the additional grounds of constructive discharge. Although the Court initially granted this motion to amend, upon subsequent motion to dismiss or for summary judgment filed by the Defendant, the Court dismissed Mr. Morse's

claim for constructive discharge stating that "its previous allowance of the Amendment was for purposes of addressing the record only, and that the Plaintiffs have shown no reason, in law or in fact, why justice required the granting of the Motion to Amend in the first instance."

The case was scheduled for trial to commence in February of 2000; however, upon motion of the Plaintiffs, the trial was re-scheduled to June 13, 2000. The Plaintiffs again moved to continue on May 26, 2000, but this motion was denied and the case was tried without a jury on various dates from June 13, 2000, until October 24, 2000. On February 5, 2001, the Court entered a final judgment of dismissal against the Plaintiffs. The Plaintiffs then filed a motion for new trial and a motion to alter findings of fact and conclusions of law; however, these motions were denied by order entered December 19, 2001. Thereafter, the Plaintiffs filed this appeal.

The following issues, which we restate, are presented for our review:

1. Did the Trial Court abuse its discretion when it denied the motion to continue filed by the Plaintiffs on May 26, 2000?

2. Did the Trial Court abuse its discretion in excluding the testimony of certain witnesses?

3. Did the Trial Court err in dismissing Mr. Morse's cause of action for constructive discharge?

4. Did the Trial Court abuse its discretion in allowing the testimony of certain witnesses?

5. Did the evidence preponderate against the Trial Court's dismissal of the Plaintiffs' claim of age discrimination?

The first issue we address is whether the Trial Court erred in failing to grant the Plaintiffs' motion to continue the trial of this case. It is well settled that a trial judge has substantial discretion in ruling upon a motion for continuance and such ruling will not be disturbed absent a clear showing that the court abused its discretion. *Tipton v. Smith*, 593 S.W.2d 298 (Tenn. Ct. App. 1979). It is our determination that the Trial Court did not abuse its discretion when it denied the Plaintiffs' motion for continuance in this case.

The record reveals that the Trial Court initially ordered that trial of this case begin on February 21, 2000; however, upon motion of the Plaintiffs filed November 11, 1999, trial was rescheduled to begin on June 13, 2000. The Plaintiffs filed an additional motion for continuance on May 18, 2000, which was heard on May 26, 2000, and denied by order entered May 31, 2000.

The Plaintiffs argue that the Trial Court should have further continued the case because the Court was aware that their attorney was ill and that his ability to prepare the case had been hampered. In support of this argument, the Plaintiffs cite statements made by their attorney regarding his state of health; however, these statements were made during trial *after* the motion for continuance had

been heard and denied. The Plaintiffs also maintain that language in a motion filed by the Plaintiffs on December 2, 1999, informs the Court of the need for delay because of the prior illness of the Plaintiffs' attorney; however, as noted above, the case *was* rescheduled thereafter to June 13, 2000. The language cited from the Plaintiffs' pleading December 2, 1999, does not constitute grounds for its subsequent motion for continuance filed over five months later on May 18, 2000. The Plaintiffs did not assert their attorney's health as grounds for continuance in the latter motion and, therefore, their argument that the Trial Court erred in failing to grant a continuance upon such grounds is without merit.

The Plaintiffs also contend that the Trial Court should have granted their motion for continuance because they needed additional time for discovery. Although, as noted above, the Trial Court denied the Plaintiffs' motion for continuance by order entered May 31, 2000, that order also reflects that the Court ruled that the Plaintiffs' motion to extend discovery, made in open court, should be granted and, accordingly, extended discovery until June 9, 2000. The Plaintiffs argue that further continuance was appropriate because the Defendant had not provided certain documents regarding the transfer of several insurance policies from the Defendant's San Gabriel district in California to the Defendant's home office in Nashville. The Plaintiffs assert their belief that the circumstances of these transfers indicate it is likely that California agents of the Defendant were engaged in the payment of premiums on customer policies but were not disciplined. The Plaintiffs argue that proof of this is important in establishing that the reasons proffered by the Defendant for its actions toward the Plaintiffs were a pretext.

In their memorandum filed on May 26, 2000, in support of their motion for continuance the Plaintiffs admit that the Defendant stated that it does not have the materials requested and Ron Pickle, the Defendant's director of compensation services, attested that the forms sought by the Plaintiffs evidencing the transfer of policies from California to Nashville were retained by the local office for ninety days and then destroyed as a matter of routine. In any event, we do not agree with the Plaintiffs contention that this case should have been continued so that they might engage in further discovery. As noted above, the original complaints in this matter were filed in February and April of 1997 and, although trial of this matter was originally scheduled for February 21, 2000, the Trial Court granted the Plaintiffs' initial motion to continue and trial was rescheduled for June 13, 2000. As also previously noted, at the Plaintiffs' request, the Court also extended the discovery deadline in this case until June 9, 2000. In *Coakley v. Daniels*, 840 S.W.2d 367 (Tenn. Ct. App. 1992) we affirmed the trial court's refusal to grant the defendant a continuance and we stated as follows at page 370:

> Trial courts have wide discretion in granting or denying continuances but a trial court must exercise that discretion in an efficient manner. The prime factor in considering a continuance is the age of the cause of action.

In *Coakley* two and one-half years had passed between the time that the cause of action arose and commencement of trial. In the case now before us, well over three years passed between the time the Plaintiffs filed their complaints and commencement of trial. It is our conclusion that the

Plaintiffs have had sufficient time for discovery and the Plaintiffs' argument that the Trial Court abused its discretion in failing to continue this case in order that they might engage in further discovery is not well taken.

The next issue we address is whether the Trial Court erred in excluding testimony of certain witnesses.

First, the Plaintiffs contend that the Court erred by "refusing to allow testimony of events over a few years old and regarding other people who had paid premiums in this company and were brought to the knowledge of the company before this event occurred and the officers advised it was not a problem." The Plaintiffs contend that this testimony should have been admitted under T.R.E. 401 and 402 and that its exclusion abrogated their right to a fair trial.

T.R.E. 401 defines "relevant evidence" as follows:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

T.R.E. 402 provides:

All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible.

In their brief the Plaintiffs assert the following with respect to the testimony they contend was erroneously excluded:

One instance was Mr. Flowers who taught classes for American General who taught that he had paid premiums. (Tr. P. 67 LL 18-25 and P. 68 L 1-19). One instance was of ten, first year premiums being paid on policies by an agent in Kingsport which were divulged to Don Tasser and others by the Plaintiffs and were advised that this was not a problem. (Tr. P.760 and P.761 LL 1-18). One instance was of the deposition of an agent who had addressed this issue with a president of the company years ago. The Court excluded this testimony for reasons which the Plaintiff does not know but they reflect a direct statement by the highest ranking officers of this company and who were involved in the transactions involving this case. This is pertinent in the issue of pretext.

As best we can tell, the Plaintiffs appear to be arguing that the testimony of Mr. Flowers is relevant because, while teaching seminars on behalf of the Defendant, he allegedly stated that he had paid premiums on policies and that the Defendant was aware of this and had not objected. The

portion of the trial record referenced in the Plaintiffs' brief in this regard consists of trial testimony of Tracy Burton wherein he describes a seminar he attended. Although Mr. Burton testifies that Mr. Flowers was present at the seminar, nowhere in the referenced testimony does Mr. Burton testify that Mr. Flowers stated that he had paid policy premiums.

The Plaintiffs fail to indicate whose testimony was improperly excluded regarding the allegation that Mr. Tasser had been told of the payment of ten first year policy premiums on policies. That portion of the record referenced by the Plaintiffs in support of their apparent argument that relevant testimony in this regard was excluded is from the testimony of Mr. Morse. The specific portion of the trial transcript referenced by the Plaintiffs in their brief provides as follows:

Bailey had paid on ten new policy premiums. He paid the first premium for those people to get the insurance, and Mr. Jessee had called the insureds and found out it to be a fact, so he told Mr. Tasser and myself what had happened, and Mr. Tasser said, "Just forget about it. Paying premiums is no big issue."

Q. Are you acquainted with Mr. Leo Lebos.

A. Yes, sir.

Q. Did you ever have any conversations with him regarding this topic?

A. Yes. With the contract that was in effect ...

Q. Before we do that, who is Mr. Leo Lebos?

A. At the time, he was the chief actuary with the company, with American General.

Q. What does the chief actuary do? What's his job?

THE COURT: How do you spell that last name?

A. L-E-B-O-S.

THE COURT: L-E-B-O-S?

A. Yeah, Lebos. Leo Lebos.

THE COURT: Thank you.

Q. What is the chief actuary? What's his job duty?

A. He's to make sure the company makes money and designs the contracts and looks at all the money issues with the company.

Q. And what was the topic of your conversation, and why were you having it with him?

A. With the contract that was there, I felt like that – and you could hold off – an agent could really look like — play a game with holding off money, and turning it in later, it would come off ...

THE COURT: What time period are you talking about?

A. This was in the '94-95 time frame. ...and then turn it in and make money because it would come off at one percent and go back on higher, and so I was talking with him about that, and he said – and then also about the bonus, about, you know, could an agent pay a premium on a bonus. He said the only way that an agent could beat that contract and beat him was if they died.

Mr. Morse's testimony regarding Mr. Tasser's alleged knowledge of premium payments by an agent and his alleged response to that information is in the record as set forth above. It is unclear from the portion of the record referenced whose testimony the Plaintiffs are alleging was erroneously excluded and we do not find that the portion of the record referenced by the Plaintiffs supports their contention that the Court excluded testimony regarding Mr. Tasser's knowledge of, and response to, information regarding the payment of premiums by agents.

Next, the Plaintiffs state, "One instance was of the deposition of an agent who had addressed this issue with a president of the company years ago." The Plaintiffs do not identify whose deposition is referred to and do not indicate in what sense the mere fact that an agent had addressed an issue to a president of the Defendant would be relevant to the issue of whether the reasons proffered by the Defendant for its actions toward the Plaintiffs were a pretext. The Plaintiffs make no reference to the record with respect to their allegations regarding the deposition of this unidentified agent.

T.R.A.P. 27(a)(7) provides that arguments in an appellant brief shall include appropriate references to the record. The Plaintiffs have failed to comply with this rule and, accordingly, it is our determination that they have waived the issue of whether the indicated testimony was erroneously excluded by the Court. *State v. Patterson*, 966 S.W.2d 435 (Tenn. Cr. App. 1997).

The Plaintiffs also argue that "the Court erred in not allowing testimony by the Plaintiffs and witnesses of inquiries and statements made to them by numerous other persons in this company as to the reasons for discharge and the circulated rumor that there had been drug money laundering as well as other accusations such as crooks and thieves." The Plaintiffs contend that testimony regarding rumors as to the reason for their demotions allegedly spread by other employees of the Defendant is relevant in establishing that there was injury to the Plaintiffs' reputations. The Plaintiffs also contend that this testimony "is enlightening on whether the Defendant was concerned

about premium payments or whether it was a mere pretext, when the Defendant allowed these rumors to circulate and did not address them even though they were requested by the Plaintiffs to do so." Presumably, the Plaintiffs rationale for the latter contention is that, if the Defendant was really opposed to the payment of premiums by its agents it would have dispelled any rumors regarding the reason for the Plaintiffs' demotions by publicizing the fact that the Plaintiffs' demotions came about because of the payment of premiums by agents, thereby, discouraging other of its employees from engaging in the same activity.

The first portion of testimony in this respect which the Plaintiffs reference as being improperly excluded is testimony given by Gordon Lampley, a district manager for the Defendant at times relevant to this case. When asked if he had heard any employees of the Defendant make derogatory comments about the Plaintiffs after their demotions Mr. Lampley testified:

> Well, first off, we had a staff meeting at the Dickson staff office in Dickson, Tennessee, and the district manager, Bill Turnage, came over to the office, and right before the meeting started, he said, "Well, they got rid of the crooks in Johnson City and Kingsport. They got rid of Tracy Burton, demoted Jim Morse and got rid of Phil Jessee."

Counsel for the Plaintiffs argued at trial that this testimony should be allowed to show the alleged humiliation suffered by the Plaintiffs and "to show the company's motivation in creating a hostile work environment" for the Plaintiffs. However, even assuming that Mr. Turnage made these comments, there is no indication that the Plaintiffs were aware of the comments or humiliated as a consequence. Nor do we agree that this testimony is relevant in establishing either that the Defendant contributed to creation of a hostile work environment by not dispelling rumors or that the Defendants would have dispelled this rumor had they been concerned about employees making premium payments. Counsel for the Plaintiffs conceded at trial that Mr. Lampley did not have any decision making authority with respect to the Plaintiffs or any corporate control over the situation in the Plaintiffs' locale. Nor do the Plaintiffs assert that the comments were made to anyone other than Mr. Lampley. It is our determination that the Trial Court properly sustained the Defendant's objection to this testimony.

The Plaintiffs also contend that the Court erred in excluding certain testimony of [1]Mr. Jessee, Mr. Burton and Mr. Morse.

Mr. Jessee testified that he had received fifteen or twenty inquiries and that he had tried to explain what had happened because he wanted people to know that he hadn't stolen anything. When asked if he felt they believed him the Defendant objected and the Court sustained upon grounds that

---

[1]Although the Plaintiffs refer to the "Harris Tr. P.", we find no documents in the record which correspond to this designation, we do find testimony related to the matters urged by the Plaintiffs in that part of the trial transcript furnished by the court reporter, Sylvia Rhea Thomas, and designated "Thomas Tr. P." in the Defendant's brief and we can only assume that the Plaintiffs intended to refer to this transcript.

the witness's answer would have been pure speculation. Thereafter, Mr. Jessee was asked if any of the inquirers had expressed doubt about the truthfulness of his explanation to them. The Defendant again objected, this time upon grounds of hearsay, and the Court sustained the objection. The Plaintiffs also contend that the Trial Court erred in sustaining the Defendant's hearsay objection to a question posed to Mr. Burton as to whether he had "receive[d] calls from other people around the country inquiring about what was going on in Kingsport." Finally, the Plaintiffs contend that the Court erred in sustaining the Defendant's hearsay objection to Mr. Morse's response that inquirers had laughed when he told them that he was demoted for paying premiums.

Upon review of the record we conclude that the referenced testimony of Mr. Jessee, Mr. Burton and Mr. Morse constitutes cumulative evidence and, if for no other reason, was properly excludable under T.R.E. 403 which provides that even relevant evidence may be excluded if it is cumulative. That the testimony in question is cumulative is apparent from the fact that Mr. Morse *was* allowed to testify that he had received two hundred inquiries regarding the demotions and that he had advised management for the Defendant that, as a result, he and his wife had been humiliated to the point of consulting a psychiatrist. Mr. Morse further testified that he specifically told management for the Defendant "that people thought that Kingsport was laundering drug money on a big time basis and they thought we were crooks up here and that's what it was all about." Finally, Mr. Morse testified that he had requested that management send out a fax explaining the actual reason for the demotions but was told that nothing could be done.

The Plaintiffs also argue that the Trial Court erred in disallowing certain testimony of Mr. Morse regarding the chain of command which was in place during the time he was employed as district manager. The portion of Mr. Morse's testimony cited by the Plaintiffs with respect to this argument is as follows:

Q. While you were district manager, as district manager, what should the chain of command be as far as anyone who had any problems or any complaints in the district that worked under you? What was the chain of command there?

A. It would have been the sales manager and the agent.

Q. Who would they have made their complaints to?

A. Agent would have first went to the sales manager, and then the sales manager would have come with the agent to me.

Q. Was it normal procedure for agents or sales managers to go directly to Nashville with their complaints or for Nashville to contact them?

A. No, sir.

Q. Did that happen while you were district manager?

-10-

At this point in the proceedings Counsel for the Defendant objected upon grounds that the testimony pertained to a time period after the Plaintiffs' demotions and was without probative value. The Trial Court agreed and the objection was sustained.

In their brief the Plaintiffs argue that "the failure to permit testimony regarding the events of Mr. Morse's resignation and conduct in the office that brought that about was inappropriately denied in that it constituted immense circumstantial evidence of the true intent of the Defendant." The Plaintiffs further assert that "[t]he testimony even if inadmissable for damages in constructive discharge was still highly indicative of the true motivation of the Defendant in all the things it did in the demotions and all other matters up to the point the Court barred the claim." (Presumably the Plaintiffs refer to the dismissed claim for constructive discharge.)

We note the following statement of Counsel for the Plaintiffs made in support of argument that the objection to this testimony should be overruled:

> If your Honor please, there's been previous testimony in this court about people being told to report directly to Nashville or Terry Keiper and not to report to Mr. Morse. That testimony is already in this record ..."

If for no other reason, this testimony, too, is excludable pursuant to T.R.E. 403 because it constitutes cumulative evidence. The Plaintiffs' argument that it was error to exclude this testimony is without merit.

The Plaintiffs also maintain that "[t]he Court erred in excluding the testimony of Joe Kelly [president of the Defendant] in which he acknowledged among other things that payment of premiums by Vaccarello [the Defendant's district manager in the San Gabriel district of California] was the most likely reason for the transfers and 2 premium payments on the California policies, and that there would be a paper trail of the reasons for the transfers and charge-backs." The Plaintiffs further assert that "[t]he existence of the paper trail is obvious for common sense reasons but is confirmed by Mr. Kelly." The testimony indicated evidently relates to the Plaintiffs allegation that activity similar to that which occurred in Kingsport also occurred in California without disciplinary action by the Defendant. However, the Plaintiffs present no argument as to why the Court's decision to exclude this testimony was erroneous and the only citation of authority presented by the Plaintiffs is the reference "TRE 401, 402 406". The Plaintiffs present no argument as to how these rules support their assertion that the Court erred. The presentation of this issue is not in compliance with T.R.A.P. 27(a)(7) and is, accordingly, waived.

Additionally, the Plaintiffs argue that the Trial Court erred in excluding the testimony of certain witnesses which the Plaintiffs assert they wished to present for purposes of rebuttal.

In *State v. Braden*, 867 S.W.2d 750 (Tenn. Cr. App. 1993) the Court stated as follows at page 760 with respect to rebuttal evidence:

The phrase "rebuttal evidence " may be defined as evidence "which tends to explain or controvert evidence produced by an adverse party."... This phrase encompasses "[a]ny competent evidence which explains or is a direct reply to, or a contradiction of, material evidence introduced by an adverse party.... Rebuttal evidence is properly admitted for the purpose of impeaching a witness through the use of a prior inconsistent statement.

Questions concerning the admission or rejection of rebuttal evidence rest within the sound discretion of the trial court; and an appellate court will not interfere with the exercise of this discretion unless it is clear on the face of the record that the trial court has abused its discretion.(citations omitted)

In their brief the Plaintiffs fail to identify by name the witnesses whose testimony they contend was erroneously disallowed for purposes of rebuttal. Instead, these witnesses are referred to as "the California agent", "the Pennsylvania witness" and "the North Carolina witnesses". Upon examination of the court record we identify these witnesses as Said Makhali, Joey Krebbs and Robert and Cathy Batchelor respectively.

The Plaintiffs assert that the California agent, Mr. Makhali, is "expected to testify on California premium payments" and that his testimony "would rebut testimony given by the defendant." However, the Plaintiffs do not specify what evidence presented by the Defendant will be rebutted by Mr. Makhali's testimony or how the testimony of that witness will rebut such evidence with appropriate references to the record. Accordingly, the issue of the propriety of the Court's disallowance of Mr. Makhali's testimony is waived. T.R.A.P 27 (a)(7). Similarly, although the Plaintiffs indicate that the Pennsylvania agent, Mr. Krebbs, would testify "regarding Vaccarello's statements regarding his staff paying premiums and Tasser fixing it for him", the Plaintiffs fail to state what specific evidence presented by the Defendant is to be rebutted by this testimony and in what way the excluded testimony will rebut such evidence nor do the Plaintiffs include appropriate references to the record in this regard. Accordingly, the issue is waived. The Plaintiffs assert that the testimony of the North Carolina witnesses, Robert and Cathy Bachelor, will contradict the testimony of Defense witness, Terry Keiper. The record indicates that the Court *did* allow the Plaintiffs to call Mr. Bachelor as a rebuttal witness. The record further indicates that the Court's decision to disallow Ms. Bachelor's testimony was based upon the Court's appropriate concern that she was not previously disclosed as a witness in the case:

THE COURT: I will allow Robert Bachelor on that narrow – to rebut any Keiper testimony that you've indicated he intends to, but not to embellish or corroborate any other evidence. I'm concerned about it because we were trying to get a disclosure of all the witnesses or possible witnesses and trying to narrow those down so that counsel for both parties could effectively complete discovery before trial, so I'm inclined at this point to deny your request as to Kathy Bachelor but will allow Robert Bachelor.

We do not find that the Trial Court abused its discretion in disallowing Ms. Bachelor's testimony and the Plaintiffs argument to the contrary is without merit.

Finally, the Plaintiffs assert that "[t]he Court erred in disallowing testimony about various individuals who were treated differently by the company based upon age, all of which were directly within the knowledge of the Plaintiffs." In support of this assertion the Plaintiffs merely set forth the following: "TRE 401, 402, and 406. (See statement of facts)" The Plaintiffs fail to state how these evidentiary rules support their assertion that the Court erred nor do the Plaintiffs make appropriate references to the record in support of this assertion. Further, the Plaintiffs fail to identify whose testimony they assert was erroneously excluded. Accordingly, the Plaintiffs have failed to comply with T.R.A.P. 27(a)(7) and the matter is waived.

The next issue we address is whether the Trial Court erred in dismissing the claim of constructive discharge asserted on behalf of Mr. Morse in the amended complaint filed by the Plaintiffs on June 9, 2000.

As previously noted, on June 9, 2000, the Plaintiffs amended their original complaint to effectively include a cause of action for constructive discharge upon assertion that actions of the Defendant were designed to force Mr. Morse into retiring. By order filed July 6, 2000, the Trial Court dismissed Mr. Morse's claim for constructive discharge as being barred by the applicable statute of limitations.

The Plaintiffs contend that amendment of the original complaint to include a claim for constructive discharge was unnecessary because the original complaint set forth sufficient facts to encompass a claim for constructive discharge and provide notice to the Defendant. The Plaintiffs further contend that, even though it was not necessary that they amend the original complaint to include a claim for constructive discharge, they should have been allowed to do so because the constructive discharge claim is not a new claim but is simply an expansion of, and relates back to, the original cause of action. We disagree with both of these contentions.

When the original complaint was filed Mr. Morse was still employed by the Defendant and remained so employed for approximately nineteen months after the original complaint was filed. Accordingly, it would be illogical to construe the original complaint as having included a cause of action for constructive discharge.

T.R.C.P. 15.03 provides that "[w]henever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." The occurrence out of which Mr. Morse's claim for constructive discharge arose could only have been the termination of his employment by retirement on November 1, 1998, which was nineteen months after the original complaint was filed. Prior to that date, grounds for a cause of action for

constructive discharge did not exist.  Consequently, Mr. Morse's contention that the constructive discharge claim relates back to the original complaint is without merit.

The statute of limitations applicable to the Plaintiffs' cause of action for constructive discharge is set forth in the Tennessee Human Rights Act at T.C.A. 4-21-311(d) and provides that such cause of action shall be filed "within (1) one year after the alleged discriminatory practice ceases." Under the facts in this case, Mr. Morse had one year from November 1, 1998, to file a cause of action for constructive discharge, however, he failed to do so.  Accordingly, his  his claim for constructive discharge is time barred and was properly dismissed by the Trial Court.

The Plaintiffs also argue that they were under no burden to raise the issue of constructive discharge absent an assertion by the Defendant that Mr. Morse quit voluntarily.  As stated by the Plaintiffs in their brief, "the sequence therefore should have been that the original complaint alleged discrimination as this one did and the answer should have alleged voluntary quitting as an affirmative defense to the Plaintiff's claim and then constructive discharge raised by the Plaintiff in response to the defense of voluntary quitting.  The burden therefore was upon the Defendant to raise the issue of voluntarily quitting, TRCP 8.03, which they did not, and there was no burden under the law and also under the circumstances of this case, for the Plaintiff to raise any issue regarding constructive discharge."  We agree that the Plaintiffs were not required to respond to a defense not asserted by the Defendant.  However, because the Plaintiffs chose to raise constructive discharge as a cause of action independent of any assertions of the Defendant, the Plaintiffs were required to raise such cause of action within the time allotted by the statute.

The next issue we address is whether Trial Court erred in allowing witness testimony that other employees of the Defendant had been disciplined for conduct like that engaged in by the Plaintiffs.  Although the Plaintiffs neglect to name the witnesses whose testimony they allege was erroneously allowed, we discern from the portions of the transcript referenced in the Plaintiffs brief that the witnesses referred to are James D'Agostino, Samuel Billante, Wayne Drake and Ronald Pickle.

First, the Plaintiffs assert that the Court erred in allowing this testimony because "there was not one shred of documentation regarding any of these employees."  In support of this assertion the Plaintiffs reference the testimony of James D'Agostino who was chairman of  the Defendant during 1995 and 1996.  Mr. D'Agostino's testimony relates to the termination of an agent in December of 1993 and indicates that a termination report in her file, which is part of the record in this case, showed that she was terminated for "violation of company rules."  Mr. D'Agostino further testified that he had "first-hand personalknowledge that the rules that were broken dealt with the payment of premium by the agent on behalf of the customer."  It is our determination that the Plaintiffs have failed to include appropriate references to the record in support of their assertion as required by T.R.A.P. 27(a)(7).  It is our further determination that the Plaintiffs have failed to cite any legal authority for the proposition that it was error to allow this testimony.

The Plaintiffs also assert that "one of the individuals who was alleged to have been disciplined for premium payments, was denied by the auditor, who stated that the discipline of those agents in the other office was for a reason totally different from premium payments." The Plaintiffs do not specify which individual they refer to. The testimony referenced by the Plaintiffs in support of this assertion is that of Samuel Billante, who was employed by the Defendant as vice president of customer service in 1995 and 1996, and that of Wayne Drake, who was employed as the associate director of field audit with the Defendant's internal audit department. We do not find that the referenced portion of the record supports the Plaintiffs' assertion and again the Plaintiffs cite no legal authority as grounds for their argument that this testimony should have been excluded by the Court. T.R.A.P. 27(a)(7).

Finally, the Plaintiffs argue that the Court should have excluded the testimony of these witnesses because "these witnesses have been asked previously, in deposition, to provide names and information regarding anyone previously disciplined for premium payments and only one person was designated, that being Francis Williamson."

The testimony referenced by the Plaintiffs related to Francis Williamson is that of Mr. D'Agostino:

> Q. Okay. Now, also, sir, you – I asked you in that same deposition if you could tell me of any agent that had ever in the history of this company been disciplined for paying premiums prior to this occasion, and do you remember me asking you that question?
>
> A. Yes, sir, I do.
>
> Q. And the answer you gave me was who, sir?
>
> A. I think a Ms. Williamson.

Mr. D'Agostino was not asked to name *all* agents who had been disciplined for paying premiums but only if he knew of *any* agent who had been disciplined for paying premiums and he named Ms. Williamson as an example.
.

The Plaintiffs also references deposition testimony of Ronald Pickle, employed by the Defendant as manager of compensation. This testimony was introduced at trial as follows[2]:

> Q. Tell me if I'm reading this correct, sir, on page 36, line 21. "Q. All right. Now, have you ever been personally aware of any prior audits that have addressed the issue of whether an agent is paying premiums or not?"

---

[2] Although the Plaintiffs only reference lines 1 through 7 of page 1225 of the trial transcript, we have cited in addition preceding lines 16-25 of page 1224 for the sake of clarity.

A. Uh-huh.

Q. Your answer was, "I'm not aware."

A. Uh-huh.

Q. "Q. Does that mean that you don't know or that you've never seen such? Which does it mean?" "A. Means that I've never seen such." "Q. Have you ever known anyone else in this company to have ever been disciplined for an agent paying premiums for an insured?" and your answer, sir, what was that?

A. What line is that?

Q. 6.

A. 6 says "No."

Mr. Pickle subsequently testifies that, even as of trial, he cannot give the names of persons disciplined for paying premiums prior to the Plaintiffs. The referenced testimony does not indicate that Mr. Pickle's trial testimony and deposition testimony are in conflict. It is not supportive of the Plaintiffs assertion that witnesses testifying at trial regarding the disciplining of persons for premium payments did not provide names and information regarding such persons when requested to do so at deposition.

The Plaintiffs argument that the Trial Court should not have allowed testimony of these witnesses regarding other employees who were disciplined by the Defendant for similar conduct is not adequately supported by reference to the record and is, therefore, not in compliance with T.R.A.P. 27(a)(7). Such argument is, accordingly, waived.

The next issue we address is whether the Trial Court erred in dismissing the Plaintiffs' case because the evidence preponderated in favor of the Plaintiffs.

Under the Tennessee Human Rights Act a plaintiff alleging age discrimination may prove such discrimination by either direct or circumstantial evidence. *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241 (6th Cir. 1995).

Tennessee courts have defined direct evidence as "evidence that 'proves a fact, or group of facts, without an inference, and which in itself, if true, conclusively establishes that fact." *Brenner v. Textron Aerostructures*, 874 S.W.2d 579 (Tenn. Ct. App. 1993) citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d. 439 (Tenn. 1992). The Trial Court did not find that the Plaintiffs established age discrimination by direct evidence in the instant matter and our review of the record does not persuade us that the Trial Court erred in that regard.

The analytical framework applicable when a plaintiff seeks to establish age discrimination when allegations of such are based on circumstantial evidence was set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell* analysis as applied to a cause of action for age discrimination the following is required to prove a *prima facie* case: (1) that the plaintiff was at least forty years of age at the time of the alleged discrimination (2) that the plaintiff was subject to adverse employment action (3) that the plaintiff was qualified for the position of employment held and (4) that the plaintiff was replaced by a younger person. *Cooley v. Carmike Cinemas, Inc.*, 25 F3d 1325 (6th Cir. 1994).

In the event that the plaintiff is able to establish a *prima facie* case of age discrimination the defendant employer must present a legitimate, non discriminatory reason for its action and if it does so the plaintiff is required to show by a preponderance of evidence that the reason presented is a mere pretext. As noted by the Court in *Manzer v. Diamond Shamrock Chemicals Company*, 29 F.3d 1078 (6th Cir. 1994), quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993), the plaintiff accomplishes this by proving by a preponderance of evidence "either (1) that the proffered reasons had no basis *in fact* (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." (emphasis in *Manzer*)

The Trial Court found that the Plaintiffs' proof was insufficient to establish a *prima facie* case of age discrimination. The Court further determined that, even if it is assumed that the Plaintiffs have established the requisite elements of a *prima facie* case, they have failed to prove that the reason proffered by the Defendant for the actions taken against the Plaintiffs was a mere pretext. The Court set forth its specific findings in this regard in its memorandum opinion as follows:

> Defendant has met its burden of proof establishing a bonafide reason for its disciplinary action toward the Plaintiffs thereby rebutting a *prima facie* case of age discrimination which disciplinary action was demoting Plaintiffs rather than terminating Plaintiffs for not implementing the orders of their superiors by investigating and accurately reporting the issue of the payment of premiums by sales agents which senior management determined was a violation of company policy and AGLA [the Defendant] codes.
>
> (A) Plaintiffs had been previously warned by Defendant's senior management in Nashville, Tennessee of the seriousness of the investigation.
>
> (B) Further, upon being dissatisfied with Plaintiff Jessee's initial report, Plaintiffs were again warned by senior management of the need for a complete and thorough investigation of the pending matter and the consequences to Plaintiffs if the investigation was incomplete or inaccurate when compared to the Kingsport District's independent audit.
>
> C) That the aforesaid findings present evidence of a legitimate nondiscriminatory reason for disciplining the Plaintiffs.

The Court further concluded that there was insufficient evidence in the record to establish that the Defendant forced Mr. Jessee to retire.

Our review a trial court's factual findings is *de novo* upon the record and we must presume that the court's findings were correct absent a preponderance of evidence to the contrary. T.R.A.P. 13(d). We further note that when a trial court has seen and heard witness testimony where issues as to the weight and credibility of such testimony are involved considerable deference must be accorded the factual findings of the court. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912 (Tenn. 1999).

Upon examination of the record before us, it is our determination that the evidence presented in this case does not preponderate against the findings and conclusions of the Trial Court. The Plaintiffs' contentions to the contrary are without merit.

All other issues raised in this appeal are pretermitted by our findings herein.

For the foregoing reasons we affirm the judgment of the Trial Court and remand for collection of costs below. Costs of appeal are adjudged against Phillip Jessee and James O. Morse and their sureties.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE